1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10    MICHAEL WADE,

11              Plaintiff,                    No. CIV S-06-1168 CMK

12          vs.

13
      MICHAEL J. ASTRUE,
14    Commissioner of Social Security,

15              Defendant.                    ORDER

16    _____/

17              Plaintiff, Michael Wade brings this action for judicial review of a final decision of

18    the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) and Local Rule 72-302.

19    The parties have filed cross motions for summary judgment.  As both parties have consented to

20    magistrate jurisdiction (docs. 7 & 9), the motions are before the undersigned for decision.

21    I.  Background

22              Plaintiff applied for Disability Income Benefits (DIB) and Supplemental Security

23    Income (SSI) payments on March 31, 2004.  He alleges disability since December 11, 1957 due

24    to mental problems, asthma, lung problems, sleep disorder, high blood pressure, headaches, and

25    problems with his legs, back, and right arm.  (Tr. 48, 55, 98.)

26    ///

Plaintiff's application was denied initially and upon reconsideration.  A hearing was held before administrative law judge (ALJ) William C. Thompson ( ALJ) on June 10, 2005.  Plaintiff testified at the hearing, and he was represented by an attorney.  (Tr. 390.)  A vocational expert (VE) also testified.  (Tr. 390.)  Plaintiff was forty-seven years old at the time of the hearing.  He attended school through the eleventh grade.   Plaintiff testified that he could read and write to some degree.  (Tr. 393.)  Plaintiff could not remember the last time he had worked.  (Tr. 395.)  He speculated that after leaving high school and before going to prison in 1988, he supported himself with a his mother's social security benefits and by doing odd jobs.  (Tr. 395-396.)  Plaintiff stated that he cannot work because he is so "messed up in his head" that he ends up hurting himself or others.  (Tr. 396.)  Plaintiff's problems with his head began after a car accident in Arizona in 1991.  (Tr. 397.)

Plaintiff testified that he had received treatment at the county mental health clinic for his mental health problems for about a year.  He takes medication and discusses anger management.  (Tr. 398.)  Plaintiff also testified that he had physical problems, for which he received treatment at the county general hospital.  (Tr. 399.)

Plaintiff stated that on a typical day, he gets up, watches television, sits on the couch, and might go to the store.  Plaintiff sometimes goes to church on Sundays and sometimes sits out in the yard.   He sometimes goes visiting with his family, but generally keeps to himself.  He does very little to help out around the house; the extent of household chores that plaintiff performs is taking out the trash.  (Tr. 400.)   When plaintiff does go to the grocery store, it is only to accompany his sister or brother-in-law, with whom he lives. (Tr. 401.)  He has not driven for a number of years because he is scared to drive because he does not think clearly.  (Tr. 401-402.)

Plaintiff stated that he has difficulty walking because of his posture.  Specifically, plaintiff stated that he had "no muscles in his chest" and his "legs give out on [him.]" Plaintiff does not use a cane.  (Tr. 402-403.)  Plaintiff's right hand does not function normally, but his left

1   one does.  (Tr. 404.)  Plaintiff stated he could lift fifty pounds with his left hand, but it would be
2   a strain.  (Tr. 404.)   Plaintiff also testified to shortness of breath for which he gets medical
3   treatment and inhalers.  (405.)  Plaintiff smokes.  He used to use alcohol and drugs, but does not
4   any longer.  (Tr. 406.)  Plaintiff does not sleep very well and sometimes hears voices.  (Tr. 407.)
5   Plaintiff testified that he has serious problems with his temper; he flies off the handle every day
6   and often thinks about hurting people.  (Tr. 408.)  Plaintiff stated that his temper was often
7   triggered because he worried that people are "making fun of [him] or wanting to hurt [him]..."
8   (Tr. 408.)

9          Plaintiff testified that his only source of treatment was the county hospital and
10  county mental health clinic.  (Tr. 398-401.)  Plaintiff submitted medical records in support of his
11  claims.

12          In his October 26, 2005 decision, the ALJ made the following findings.
13  Plaintiff's asthma, reduced range of motion of the right shoulder, mood disorder, and borderline
14  intellect are considered "severe."  However, the ALJ found that these impairments do not meet
15  or equal one of the listed impairments (listings) in Appendix I, Subpart P, Regulation No. 4.  The
16  ALJ found plaintiff's testimony regarding his limitations was not totally credible.  The ALJ
17  found that plaintiff had the residual functional capacity (RFC) to sit without restriction for eight
18  hours; to stand/walk for six hours of an eight hour day; to lift fifty pounds occasionally and
19  twenty-five pounds frequently; should avoid concentrated exposure to heights, moving
20  machinery, dust, pollen, smoke, and fumes; should never climb ladders; can occasionally
21  stoop/bend, kneel, crouch, squat or crawl; occasionally reach horizontally; and, perform
22  unskilled work with limited public contact.  The ALJ found that plaintiff had no past relevant
23  work, was a younger individual, and had a limited education.  He concluded that plaintiff had the
24  RFC to perform medium work, but that his limitations did not allow him to perform the full
25  range of medium work.
26  ///

1    Based on these findings, the ALJ concluded that plaintiff was not eligible for DIB

2 or SSI. The decision of the ALJ became final when the Appeals Council denied plaintiff's

3 request for a review on April 25, 2006. The plaintiff filed a timely appeal in this court.

4 II. Standard of Review

5    This court's review is limited to whether the Commissioner's decision to deny

6 benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported

7 by substantial evidence on the record as a whole.  Copeland v. Bowen, 861 F.2d 536, 538 (9th

8 Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76

9 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less

10 than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v.

11 Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable

12 mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

13 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59

14 S. Ct. 206 (1938)).  The court must consider both evidence that supports and evidence that

15 detracts from the Commissioner's decision, but the denial of benefits shall not be overturned

16 even if there is enough evidence in the record to support a contrary decision. See Jones v.

17 Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  If substantial evidence supports the administrative

18 findings, or if there is conflicting evidence supporting a finding of either disability or

19 nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30

20 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing

21 the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22 III.    Discussion

23    In his motion for summary judgment, plaintiff argues that the ALJ did not

24 properly assess plaintiff's credibility; did not afford proper weight to the opinion of plaintiff's

25 treating physician; did not give proper weight to the opinion of the medical consultant's

26 ///

4

opinions; failed to include all of plaintiff's limitations in his RFC finding; did not properly assess
lay witness testimony; and failed to make a proper vocational finding.

      A.    Credibility Finding

          If the ALJ finds a claimant's testimony as to the severity of his pain and
impairments unreliable, then the ALJ must make a credibility determination with findings
specific enough to permit the court to conclude that the ALJ did not arbitrarily discredit
claimant's testimony.   Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); Bunnell v.
Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)(en banc)(overruled on other grounds).  In
determining whether subjective complaints are credible, the ALJ should first consider objective
medical evidence and then consider other factors.  Bunnell, 947 F.2d at 344.  However, once a
claimant produces medical evidence of an underlying impairment, the ALJ may not discredit
plaintiff's testimony about his symptoms because it is not supported by the objective evidence.
Lester v. Chater, 81 F.3d 821, 834 (1996).

          The following factors may also be considered: (1) the applicant's reputation for
truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or
inadequately explained failure to seek treatment or to follow a prescribed course of treatment,
and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see
generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records,
physician and third party testimony about nature, severity, and effect of symptoms, and
inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security
Administration, 119 F.3d 789, 792 (9th Cir. 1997).  If the ALJ's credibility finding is supported
by substantial evidence in the record, the court may not engage in second guessing.   Morgan v.
Comm'n of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

          Here, the ALJ found that plaintiff's statements regarding his limitations were
"generally credible, but not to the extent alleged because his medical records show that treating
physican(s) responded with limited and conservative treatment."   The ALJ also noted that

1   plaintiff had been convicted of a felony and had been in prison in the last ten years, and this

2   reflects on his credibility.

3              The court finds that the ALJ did not offer specific and convincing reasons for

4   finding plaintiff's testimony regarding his limitations only partially credible.  The ALJ asserted

5   that plaintiff's limitation testimony was only partially credible due to the conservative treatment

6   reflected by his medical records.  However, a review of the record indicates that plaintiff's

7   limited treatment is explained by his inability to afford treatment.  Plaintiff reported that he has

8   no medical insurance (Tr. 45) and that his only source of treatment is the county hospital.  (Tr.

9   293-300, 313-315, 330-365, 400.)  Inability to afford treatment is among the circumstances that

10  justify failure to obtain treatment.  Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995.)  This

11  circuit has "criticized the use of a lack of treatment to reject mental complaints both because

12  mental illness is notoriously underreported and because 'it is a questionable practice to chastise

13  one with a mental impairment for the exercise of poor judgement in seeking rehabilitation.'"

14  Regennitter v. Comm'n of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir.

15  1999)(quoting Ngyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1995)).

16             Moreover, a review of the record indicates that plaintiff's testimony regarding his

17  limitations is supported by the objective medical evidence.  For example, the intake psychiatrist

18  at the county mental health clinic, Dr. Milton Edelman[1], observed that plaintiff was in a constant

19  state of agitation, had hallucinations and had thoughts of suicide.  Dr. Edelman diagnosed

20  plaintiff with schizoaffective disorder bipolar and schizoaffective and personality disorder. (Tr.

21  315-322.)  Dr. Edelman opined that plaintiff was not "anywhere near a degree of stability to get

22  into the work marketplace."  (Tr. 321-322.)  Consulting Examiner Wakefield opined that

23  plaintiff would exhibit a minimally acceptable level of interaction with others, social and

24  _____

25             [1]Plaintiff saw Dr. Edelman from December 2004 through March 2005.  Due to his
    poverty, plaintiff receives treatment from the county hospital and mental health clinic.
26  Accordingly, Dr. Edelman is the closest thing that plaintiff has to a treating physician.

1  behavioral functions affected by mood swings, and deficient concentration and pace.  (Tr. 246.)

2          The court also finds that the ALJ's rejection of plaintiff's testimony of limitation

3  because of plaintiff's prior felony conviction and prison time is unpersuasive.  Conclusory

4  reasons will not justify an ALJ's rejection of a plaintiff's credibility.  Plaintiff was convicted of a

5  felony; however, the ALJ made no mention of whether the underlying crime was one that was

6  particularly probative of plaintiff's veracity.

7          Although the ALJ provided facially cogent reasons for finding plaintiff's

8  testimony concerning his limitations only partially credible, those reasons are not supported by

9  substantial evidence in the record.  The court will remand this matter pursuant to sentence four

10  of 42 U.S.C. § 405(g) for consideration of plaintiff's credibility regarding the severity of his

11  physical and mental symptoms.

12          B.    Treating Physician's Opinion

13          Plaintiff argues that the ALJ erred in rejecting the opinion of treating psychiatrist

14  Dr. Edelman at the county mental health clinic.  The opinion of an examining physician is

15  entitled to greater weight than the opinion of a non-examining, non-treating physician.  Lester,

16  81 F.3d at 831.  The ALJ must set forth in the record specific and legitimate reasons for

17  discounting the opinion of a plaintiff's treating physician in favor of the opinion of the non-

18  examining medical advisor.  Nguyen, 100 F.3d at 1265.

19          Here, the ALJ did not address the opinion of Dr. Edelman in his decision.  The

20  Commissioner argues that this omission is not reversible legal error because Dr. Edelman's

21  diagnosis of plaintiff was "immaterial because Dr. Edelman did not state how these diagnoses

22  translated into functional work-related limitations."  (Def.'s Mot. Summ. J. at 9.)  The

23  Commissioner further argues that plaintiff failed to produce relevant evidence that he had been

24  disabled for a period of twelve months to establish the existence of a disabling mental

25  impairment.  (Id. at 10.)

26  ///

1    The court disagrees with the Commissioner's assessment and finds that the ALJ

2    erred by failing to discuss Dr. Edelman's treatment notes.  As previously mentioned, plaintiff has

3    no medical insurance (Tr. 45) and his only source of treatment was the county hospital and the

4    county mental health clinic.  (Tr. 293-300, 313-315, 330-365, 400.)  Plaintiff's inability to obtain

5    consistent medical treatment because of his poverty is not a valid reason to fail to address the

6    opinions of Dr. Edelman.  See, e.g. Regennitter, 166 F.3d at 1299 (stating that claimant's failure,

7    due to poverty, to seek treatment from a mental health professional was not a valid reason to

8    reject opinion of examining medical expert).   Although Dr. Edelman is not a treating physican

9    in the normal sense of the definition, he is the closest thing that plaintiff has to such.  Indeed, Dr.

10    Edelman is the closest thing that plaintiff has to a treating mental health provider, as he

11    examined plaintiff over the course of several months with the purpose of treating plaintiff's

12    symptoms.  See, e.g., Lester, 81 F.3d at 830 ("Cases in this circuit distinguish among the

13    opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

14    those who examine but do not treat the claimant (examining physicians); and (3) those who

15    neither examine nor treat the claimant (nonexamining physicians)."); 20 C.F.R. § 404.1527

16    (defining medical opinions and prescribing the respective weight to be given the opinions of

17    treating sources and examining sources).

18    An ALJ "need not discuss all evidence presented.  Rather, [he] must explain why

19    'significant probative evidence has been rejected.'" See Vincent on Behalf of Vincent v. Hecker,

20    739 F.2d 1393, 1394-95 (9th Cir. 1984)(emphasis in original)(internal citations omitted).  The

21    underlying record does not support the conclusion that Dr. Edelman's assessments of plaintiff

22    were neither significant nor probative; therefore, the court cannot find that the ALJ's failure to

23    address any of Dr. Edelman's assessments was not reversible legal error.  A remand for further

24    proceedings is also proper where an ALJ has, as appears to be the case here, rejected a

25    physician's opinion in favor of his own interpretation of the medical evidence.  Day v.

26    Weinberger, 522 F.2d 1154, 1156-57 (9th Cir. 1975).  The court will remand this matter pursuant

to sentence four of 42 U.S.C. § 405(g) for consideration of Dr. Edelman's assessment of plaintiff.

C.   Lay Witness Testimony

Plaintiff argues that the ALJ erred by failing to address the function report completed by plaintiff's sister Sharon Juelch.   An ALJ is required to consider lay witness testimony in certain types of cases.   Smolen, 80 F.3d at 1288.   When a claimant alleges pain or other symptoms that are not supported by the medical evidence in the file, the adjudicator shall obtain detained descriptions of daily activities by directing specific inquiries about pain and its effect to third parties who would be likely to have such knowledge.   Id.   In Smolen, plaintiff's alleged disability was based on fatigue and pain.   Id.   Her medical records were sparse and did not provide adequate documentation of her symptoms. Id.   Her friends and family members testified on her behalf at her hearing, and the ALJ rejected their testimony.   Id.

An ALJ "need not discuss all evidence presented, [but he] must explain why 'significant probative evidence has been rejected.'"   Vincent, 739 F.2d at 1394-95(emphasis in original)(internal citations omitted).   Here, plaintiff's sister filled out a function report on April 11, 2004.  (Tr. 89-97.)  The report discussed the difference in plaintiff's abilities before and after a he was hit by a drunk driver.   The report also detailed plaintiff's physical and mental limitations. (Tr. 89-97.)  Because plaintiff has received limited medical care due to his lack of insurance, the function report provided by his sister is a probative record of his ongoing limitations.   The ALJ provided no justification for failing to consider this evidence.   Vincent, 739 F.2d at 1394-95.   Accordingly, the court finds that it is appropriate to remand this matter for consideration of the report completed by plaintiff's sister.

D.   Opinion of Non-Examining Physician

Plaintiff contends that the ALJ erred by failing to give specific and legitimate reasons for discounting the opinion of consulting physician, Dr. Mateus.  The Ninth Circuit has made clear that the opinion of an examining physician is entitled to greater weight than the

1  opinion of a nonexamining physician.  Pitzer v. Sullivan, 908 F.3d 502, 506 (9th Cir. 1990).

2  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that

3  justifies the rejection of the opinion of either an examining physician or a treating physician."

4  Lester, 81 F.3d at 831.

5  Here, the ALJ gave greater weight to the opinion of examining physician Dr.

6  Wakefield with regard to plaintiff's mental ability to work because Dr. Wakefield had the

7  opportunity to interview and test plaintiff while the consulting physician did not.  The ALJ

8  assumed that the Dr. Mateus's opinion of plaintiff's mental ability to work was contradicted by

9  Dr. Wakefield's opinion.  The primary error in the ALJ's reasoning is the conclusion that the two

10  physician's opinions are contradictory.  A review of the record reveals that they are not.

11  Dr. Wakefield opined that plaintiff could follow simple "and some more complex

12  work rules."  (Tr. 247.)  Dr. Wakefield observed that plaintiff had "greater than expected

13  difficulty with a task requiring him to track to sequences simultaneously..." and that his

14  persistence was adequate  (Id.)  Dr. Wakefield noted that plaintiff's concentration was deficient

15  and that his memory was adequate.  (Tr. 245.)

16  Dr. Mateus's assessment of plaintiff was mostly limited to checking off boxes.

17  (Tr. 278-279.)  Dr. Mateus opined that plaintiff's ability to understand and remember difficult

18  instructions was moderately limited and that his ability to carry out detailed instructions was

19  markedly limited. (Tr. 278-79.)   These assessments are not contradictory to those of Dr.

20  Wakefield.

21  The court finds that the ALJ erred in rejecting Dr. Mateus's report on the basis of

22  a conflict between the two psychologists; there is no conflict.  Nguyen, 100 F.3d at 1465

23  ("Where the purported existence of an inconsistency is squarely contradicted by the record, it

24  may not serve as a basis for the rejection of an examining physician's conclusions.").  On

25  remand, the ALJ should re-evaluate the limitations assessed by Dr. Mateus.

26  ///

1               E.     Side Effects of Plaintiff's Medications

2               Plaintiff argues that the ALJ erred in failing to consider the side effects of his

3     medications when determining his RFC.  An ALJ must "consider all factors that might have a

4     significant impact on an individual's ability to work."  Erickson v. Shalala, 9 F.3d 813, 817 (9th

5     Cir. 1993).  Side effects of medications is one of those factors.  Id. at 818; see also Varney v.

6     Secretary of HSS, 846 F.2d 581, 585 (9th Cir. 1987)(superseded by statute on other grounds).

7               In this case, plaintiff testified that he took a wide range of medications.  He

8     testified that his side effects included confusion.(Tr. 400.)  He also stated that his medications

9     caused dry-mouth, moodiness, nausea, shaking, excessive sleep, and slow reactions.  (Tr. 60.)

10    Although it may initially appear from the record that the ALJ failed to consider plaintiff's

11    medical side effects.  However, the totality of the record demonstrates that the side effects of

12    plaintiff's medications were generally the same as his general symptoms—moodiness,

13    confusion.  Additionally, plaintiff never testified that the side effects of his medication limited

14    his residual capacity in a manner different from his general symptoms.

15              It is reasonable to assume that the ALJ's specific findings concerning plaintiff's

16    subjective statements of his limitation included findings about the side effects of plaintiff's

17    medications.  Therefore, the court finds that the failure to specifically discuss the side effects of

18    plaintiff's medications is not reversible error.  However, the ALJ would be well advised to err on

19    the side of caution and make explicit findings regarding the side effects of plaintiff's medications

20    on remand.

21              F.     Other Allegations of Error

22              Plaintiff argues that the ALJ erred by failing to include reaching limitations in his

23    RFC finding and by failing to include plaintiff's limited public contact restriction in the

24    hypothetical question posed to the VE.  As this matter is being remanded, it is probable that the

25    ALJ will make a new RFC finding and will pose new questions to the VE, thus rendering

26    plaintiff's claims of error regarding the current RFC finding and hypothetical questions moot.

Accordingly, the court makes no findings on these two allegations of error.

IV.     <u>Conclusion</u>

        For the foregoing reasons, IT IS ORDERED that this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

        Accordingly, IT IS HEREBY ORDERED that:

        1.  Plaintiff's motion for summary judgment is denied;

        2.  The Commissioner's cross motion for summary judgment is denied; and

        3.  This matter is remanded for further proceedings consistent with this order.

DATED:   February 28, 2007.


                                        CRAIG M. KELLISON
                                        UNITED STATES MAGISTRATE JUDGE